# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MOASHEENA L.,[1]<br>        Plaintiff,<br><br>  vs.<br><br>KILOLO KIJAKAZI, ACTING<br>COMMISSIONER OF SOCIAL<br>SECURITY,[2]<br>        Defendant. | No. 2:20-cv-00218-MKD<br><br>ORDER DENYING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT AND GRANTING<br>DEFENDANT'S MOTION FOR<br>SUMMARY JUDGMENT<br><br>ECF Nos. 17, 18 |

---

[1] To protect the privacy of plaintiffs in social security cases, the undersigned identifies them by only their first names and the initial of their last names. *See* LCivR 5.2(c).

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit. *See* 42 U.S.C. § 405(g).

ORDER - 1

Before the Court are the parties' cross-motions for summary judgment. ECF Nos. 17, 18. The parties consented to proceed before a magistrate judge. ECF No. 7. The Court, having reviewed the administrative record and the parties' briefing, is fully informed. For the reasons discussed below, the Court denies Plaintiff's motion, ECF No. 17, and grants Defendant's motion, ECF No. 18.

## JURISDICTION

The Court has jurisdiction over this case pursuant to 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of

substantial gainful work which exists in the national economy." 42 U.S.C. §

1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to

determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §

416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work

activity. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is engaged in "substantial

gainful activity," the Commissioner must find that the claimant is not disabled. 20

C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis

proceeds to step two. At this step, the Commissioner considers the severity of the

claimant's impairment. 20 C.F.R. § 416.920(a)(4)(ii). If the claimant suffers from

"any impairment or combination of impairments which significantly limits [his or

her] physical or mental ability to do basic work activities," the analysis proceeds to

step three. 20 C.F.R. § 416.920(c). If the claimant's impairment does not satisfy

this severity threshold, however, the Commissioner must find that the claimant is

not disabled. *Id.*

At step three, the Commissioner compares the claimant's impairment to

severe impairments recognized by the Commissioner to be so severe as to preclude

a person from engaging in substantial gainful activity. 20 C.F.R. §

416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the

enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work).  20 C.F.R. § 416.920(a)(4)(iv).  If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(f).  If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v).  In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience.  *Id.*  If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §

416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id.*

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

On May 1, 2017, Plaintiff applied for Title XVI supplemental security income benefits alleging a disability onset date of September 26, 2015.[3] Tr. 15, 107, 252-60, 261-66. The application was denied initially, and on reconsideration. Tr. 147-60, 164-70. Plaintiff appeared before an administrative law judge (ALJ)

---

[3] Plaintiff previously filed an application for supplemental security income on May 12, 2012; the claim was denied on initial consideration and reconsideration, which Plaintiff appealed. Tr. 15. The Appeals Council denied Plaintiff's request for review, Tr. 79-84, and this Court denied Plaintiff's Motion for Summary Judgment on March 14, 2018, Tr. 85-105.

ORDER - 6

on June 20, 2019.  Tr. 31-56.  On July 18, 2019, the ALJ denied Plaintiff's claim. Tr. 12-30.

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since May 1, 2017.  Tr. 18.  At step two, the ALJ found that Plaintiff has the following severe impairments: Sjogren's syndrome, diabetes mellitus, non-epileptic seizure disorder, history of asthma, gastroesophageal reflux disease (GERD), obesity, learning disorders, mood disorder not otherwise specified versus depressive disorder not otherwise specified, anxiety disorder not otherwise specified, posttraumatic stress disorder (PTSD) with associated episodes of stuttering and tremors, lumbar degenerative disc disease, and borderline intellectual functioning.  *Id.*

At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 19.  The ALJ then concluded that Plaintiff has the RFC to perform light work with the following limitations:

> [Plaintiff] is able to sit, stand, and walk six hours each with normal breaks in an eight-hour workday.  She can lift/carry 20 pounds occasionally and 10 pounds frequently.  She can engage in frequent stooping, occasional crouching, occasional kneeling, occasional crawling, frequent balancing, and occasional climbing of ramps and stairs.  She is unable to climb ladders, ropes, or scaffolds.  She should avoid concentrated exposure to pulmonary irritants, marked temperature extremes such as heat and cold, and unprotected heights.  She should avoid concentrated exposure to hazardous machinery.  She can frequently handle, finger, and feel.  [Plaintiff] can understand,

remember, and carry out simple, routine, repetitive work instructions and work tasks where she is shown what to do versus receiving verbal instructions. She can handle routine supervision, as opposed to heavy-handed or over-the-shoulder type supervision. [Plaintiff] is unable to perform any job requiring independent judgment.

Tr. 20.

At step four, the ALJ found Plaintiff is able to perform her past relevant work as a teacher aid and bus attendant. Tr. 26. Alternatively, at step five, the ALJ adopted the prior ALJ's step five findings. *Id.* Therefore, the ALJ concluded Plaintiff was not under a disability, as defined in the Social Security Act, from the date of the application through the date of the decision. *Id.*

On April 13, 2020, the Appeals Council denied review of the ALJ's decision, Tr. 1-6, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3).

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying her supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff raises the following issues for review:

1. Whether the ALJ conducted a proper step-three analysis;

2. Whether the ALJ conducted a proper step-four analysis; and

3. Whether the ALJ properly evaluated the medical opinion evidence.

ECF No. 17 at 11.

ORDER - 8

# DISCUSSION

## A. Step-Three

Plaintiff contends the ALJ erred in finding Plaintiff's Sjorgen's syndrome does not meet or equal Listing 14.10. ECF No. 17 at 13-17. At step three, the ALJ must determine if a claimant's impairments meet or equal a listed impairment. 20 C.F.R. § 416.920(a)(4)(iii). The Listing of Impairments "describes each of the major body systems impairments [which are considered] severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education or work experience." 20 C.F.R. § 416.925. "Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further inquiry unnecessary.' " *Kennedy v. Colvin*, 758 F.3d 1172, 1176 (9th Cir. 2013) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990)). "Listed impairments set such strict standards because they automatically end the five-step inquiry, before residual functional capacity is even considered." *Kennedy*, 758 F.3d at 1176. If a claimant meets the listed criteria for disability, she will be found to be disabled. 20 C.F.R. § 416.920(a)(4)(iii).

"To *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." *Tackett,* 180 F.3d at 1099 (emphasis in original); 20 C.F.R. § 416.925(d). "To *equal* a

ORDER - 9

listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least equal in severity and duration' to the characteristics of a relevant listed impairment . . . ." *Tackett*, 180 F.3d at 1099 (emphasis in original) (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a). "If a claimant suffers from multiple impairments and none of them individually meets or equals a listed impairment, the collective symptoms, signs and laboratory findings of all of the claimant's impairments will be evaluated to determine whether they meet or equal the characteristics of any relevant listed impairment." *Tackett*, 180 F.3d at 1099. However, "[m]edical equivalence must be based on medical findings," and "[a] generalized assertion of functional problems is not enough to establish disability at step three." *Id*. at 1100 (quoting 20 C.F.R. § 404.1526(a)); 20 C.F.R. § 416.926(a).

The claimant bears the burden of establishing her impairment (or combination of impairments) meets or equals the criteria of a listed impairments. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). "An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3." Social Security Ruling (SSR) 17-2P, 2017 WL 3928306, at *4 (effective March 27, 2017).

Here, the ALJ found Plaintiff's impairments do not meet or equal a listing, including Listing 14.10B. Tr. 19-20. The Listing for Sjögren's syndrome requires the existence of Sjögren's syndrome "as described in 14.00D7." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.10. Section 14.00D(7) describes the syndrome as:

> (i). . . an immune mediated disorder of the exocrine glands. Involvement of the lacrimal and salivary glands is the hallmark feature, resulting in symptoms of dry eyes and dry mouth, and possible complications, such as corneal damage, blepharitis (eyelid inflammation), dysphagia (difficulty in swallowing), dental caries, and the inability to speak for extended periods of time. Involvement of the exocrine glands of the upper airways may result in persistent dry cough.
> (ii) Many other organ systems may be involved including musculoskeletal (arthritis, myositis), respiratory . . . gastrointestinal . . . genitourinary . . . skin . . . neurologic . . . mental . . . and neoplastic . . . Severe fatigue and malaise are frequently reported. Sjögren's syndrome may be associated with other autoimmune disorders . . . ; "usually the clinical features of the associated disorder predominate.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00D(7).

In addition to demonstrating Sjögren's syndrome as described above, Listing 14.10 requires either:

> A. Involvement of two or more organs/body systems, with:
> 1. One of the organs/body systems involved to at least a moderate level of severity; and
> 2. At least two of the constitutional symptoms and signs (severe fatigue, fever, malaise, or involuntary weight loss); or
> B. Repeated manifestations of Sjögren's syndrome, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
> 1. Limitation of activities of daily living;
> 2. Limitation in maintaining social functioning; or
> 3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

ORDER - 11

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.10.

Plaintiff contends the ALJ erred in his analysis, because the ALJ relied on the testimony of medical expert Dr. Jahnke in finding Plaintiff does not meet Listing 14.10, and the ALJ did not cite any other evidence in support of the finding. ECF No. 17 at 14-15. Plaintiff argues she meets both Listing 14.10A and Listing 14.10B. *Id.* Regarding Listing 14.10A, Plaintiff cites to evidence of dry eyes and dry mouth, arthralgias throughout the body, fatigue, malaise, and chronic fevers. *Id.* at 15-16. Regarding Listing 14.10B, Plaintiff cites to the same evidence, in addition to the 2015 ALJ decision in which the ALJ found Plaintiff had moderate to marked limitations in concentration, persistence, or pace. *Id.* at 16. Plaintiff argues the 2015 ALJ decision is sufficient to support a finding that she has at least marked limitations in her ability to complete tasks in a timely manner due to deficiencies in concentration, persistence, or pace. *Id.* at 17.

Here, the ALJ found Plaintiff does not meet or equal Listing 14.10 because Dr. Jahnke testified that Plaintiff does not meet the listing. Tr. 19. Dr. Jahnke testified there is no evidence Plaintiff's Sjorgen's is at listing-level severity. Tr. 42. Plaintiff contends the ALJ should not rely on Dr. Jahnke's opinion because her testimony suggests she is unfamiliar with Sjorgen's, as Dr. Jahnke testified it is uncommon for Sjogren's to cause malaise or deficits in concentration, focus, or memory. ECF No. 17 at 14-15 (citing Tr. 25). Dr. Jahnke was asked if it is

common for people with Sjogren's to complain of impaired "concentration or focus or other kind of malaise and difficulties," and "intermittent problems with memory," to which Dr. Jahnke responded it is uncommon, Tr. 44. While Listing 14.00D(7) states fatigue and malaise are frequently reported, and impaired concentration/focus or memory are possible symptoms, there is no indication impaired concentration/focus or memory are frequently reported symptoms of Sjogren's. 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 14.00D(7). Dr. Jahnke has 25 years' experience as a practicing physician, and six years' experience as a medical expert at the time of the hearing, Tr. 815-16, and Plaintiff has not demonstrated that Dr. Jahnke's testimony was unreliable; as such, the ALJ reasonably relied on Dr. Jahnke's testimony.

While Plaintiff offers an alternative interpretation of the evidence in arguing her symptoms meet Listing 14.10A and Listing 14.10B, ECF No. 17 at 15-16, Dr. Jahnke testified Plaintiff's symptoms do not meet the listings, Tr. 42. Dr. Jahnke testified Plaintiff was diagnosed with Sjogren's, and treated on and off with Plaquenil, but there were not frequent complaints of dry eyes or dry mouth. Tr. 39. Plaintiff notes she has reported fatigue, malaise, and chronic fevers, ECF No. 17 at 16, however, Plaintiff cites to incidences where she reported malaise, fatigue or fevers in the context of medical visits where she was diagnosed with diabetic ketoacidosis and presumed sepsis, Tr. 504, a visit where Plaintiff reported

symptoms related to Sjogren's, Tr. 832-38, and a visit where Plaintiff reported she

had been "[d]oing well," and reported her medication had helped improve her

Sjogren's symptoms, Tr. 861-67. While Plaintiff argues the evidence demonstrates

she has a marked limitation in concentration, persistence, or pace because the 2015

ALJ's decision finding Plaintiff has "moderate to marked" limitations in

concentration, persistence or pace, ECF No. 17 at 16, the 2015 decision explicitly

found Plaintiff had less than marked limitations as the decision states "moderate to

marked," Tr. 64, and Plaintiff does not point to current evidence demonstrating a

marked limitation. Plaintiff has not met her burden in demonstrating she meets

Listing 14.10. She has not presented any argument as to how her conditions equal

Listing 14.10. Plaintiff is not entitled to remand on these grounds.

**B. Step-Four**

Plaintiff contends the ALJ erred in his step four analysis by finding Plaintiff

capable of performing her past work as a teacher aid and bus attendant. ECF No.

17 at 18-20.

At step four of the sequential evaluation, the ALJ must determine whether

the claimant has the RFC to perform past relevant work. 20 C.F.R. § 416.920(f).

To make this determination, the ALJ must make the following specific findings of

fact: (1) a finding of fact as to the individual's RFC; (2) a finding of fact as to the

physical and mental demands of the past job/occupation; and (3) a finding of fact

that the individual's RFC would permit a return to his or her past job or occupation. S.S.R. 82-62 at *4 (January 1, 1982). Work is usually relevant when it was performed within the 15 years prior to the time of adjudication, although work performed prior to the 15-year period may be relevant when there is a continuity of skills, knowledge, and processes between the older work and the claimant's more recent work. SSR 82-62. A claimant has the ability to return to her previous work if she can perform the "'actual functional demands and job duties of a particular past relevant job'" or "'[t]he functional demands and job duties of the [past] occupation as generally required by employers throughout the national economy.'" *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) (quoting SSR 82-61).

At step four, the ALJ found Plaintiff could perform her past work as a teacher aid and bus attendant, both as actually and generally performed. Tr. 26. First, Plaintiff argues the ALJ erred at step four in finding Plaintiff can perform her past work as actually performed. ECF No. 17 at 19. However, Plaintiff previously argued the ALJ erred at step four in considering her past work. *Lucas v. Comm'r of Soc. Sec. Admin.*, 2:17-cv-00136-RHW, ECF No. 12 at 17. The law of the case doctrine applies in the Social Security context. *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016). Under the law of the case doctrine, a court is precluded from revisiting issues which have been decided—either explicitly or implicitly—in a

ORDER - 15

previous decision of the same court or a higher court. *Hall v. City of Los Angeles*, 697 F.3d 1059, 1067 (9th Cir. 2012). The doctrine of the law of the case "is concerned primarily with efficiency, and should not be applied when the evidence on remand is substantially different, when the controlling law has changed, or when applying the doctrine would be unjust." *Stacy*, 825 F.3d at 567.

The evidence related to the ALJ's step four decision in the present case is identical to the evidence at the time of the 2015 decision. At the 2015 hearing, Plaintiff was asked to describe her past work briefly, Tr. 100-01, and she completed a work history form in which she described her past work, Tr. 250. Plaintiff did not complete a new work history form nor provide new testimony on her past work in the present case. The ALJ found Plaintiff has the same limitations as she had in 2015, Tr. 20, and the ALJ relied on the vocational expert testimony from the 2015 hearing, and did not take new expert testimony, Tr. 26. The evidence in this case is substantially the same, the controlling law has not changed, and Plaintiff presents no arguments as to how applying the law of the case doctrine would be unjust. As such, the Court will not revisit the issue of whether the ALJ erred in finding Plaintiff capable of performing her past work as actually performed.

Next, Plaintiff argues the ALJ erred in adopting the prior ALJ's RFC and finding Plaintiff could perform her past work as generally performed, when the

medical records show Plaintiff is more limited than accounted for in the RFC.
ECF No. 17 at 19. Defendant contends Plaintiff's step four argument merely
restates her other arguments. ECF No. 18 at 19. The Court will only disturb the
ALJ's RFC findings if they are not supported by substantial evidence. *Hill,* 698
F.3d at 1158.

The ALJ adopted the prior ALJ's RFC finding and relied on vocational
expert testimony from the 2015 hearing, which Plaintiff argues was an error
because Plaintiff has a greater level of limitation than accounted for in the RFC.
ECF No. 17 at 19. The ALJ found Plaintiff rebutted *Chavez* "only in a technical
sense," as she demonstrated some new mostly non-severe impairments, she alleged
deterioration, and the mental health listings had changed since the prior decision.
Tr. 16. While the ALJ found Plaintiff has two new severe impairments, borderline
intellectual functioning and degenerative disc disease, Tr. 18, 62, Plaintiff has not
demonstrated that these impairments cause any additional limitations not already
accounted for in the RFC. Plaintiff argues the ALJ's RFC does not reflect her
current limitations because she has had worsening in her symptoms, ECF No. 17 at
19, however Plaintiff does not cite to objective evidence that supports a finding
that she is more limited than accounted for in the RFC. While medical providers
opined Plaintiff had additional limitations not accounted for in the RFC, as
discussed *supra,* the ALJ did not err in his consideration of the medical opinion

evidence.  Further, while Plaintiff alleged worsening of her symptoms, Plaintiff has not challenged the ALJ's rejection of her symptom claims.  As such, Plaintiff has not presented any evidence of improperly rejected limitations that should have been incorporated into the RFC.  Plaintiff is not entitled to remand on these grounds.

**C. Medical Opinion Evidence**

Plaintiff contends the ALJ erred in his consideration of the opinions of Renee Thompson, Psy.D., and Clark Ashworth, Ph.D.  ECF No. 17 at 18.

For claims filed on or after March 27, 2017, new regulations apply that change the framework for how an ALJ must evaluate medical opinion evidence. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. § 416.920c.  The new regulations provide that the ALJ will no longer "give any specific evidentiary weight…to any medical opinion(s)…" *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. § 416.920c(a).  Instead, an ALJ must consider and evaluate the persuasiveness of all medical opinions or prior administrative medical findings from medical sources.  20 C.F.R. § 416.920c(a) and (b).  The factors for evaluating the persuasiveness of medical opinions and prior administrative medical findings include supportability, consistency, relationship with the claimant (including length of the treatment, frequency of

examinations, purpose of the treatment, extent of the treatment, and the existence

of an examination), specialization, and "other factors that tend to support or

contradict a medical opinion or prior administrative medical finding" (including,

but not limited to, "evidence showing a medical source has familiarity with the

other evidence in the claim or an understanding of our disability program's policies

and evidentiary requirements"). 20 C.F.R. § 416.920c(c)(1)-(5).

Supportability and consistency are the most important factors, and therefore

the ALJ is required to explain how both factors were considered. 20 C.F.R. §

416.920c(b)(2). Supportability and consistency are explained in the regulations:

> (1) *Supportability.* The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency.* The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how

the other factors were considered. 20 C.F.R. § 416.920c(b)(2).[4] However, when

_____

[4] The parties disagree over whether Ninth Circuit case law continues to be

controlling in light of the amended regulations, specifically whether an ALJ is still

ORDER - 19

two or more medical opinions or prior administrative findings "about the same issue are both equally well-supported ... and consistent with the record ... but are not exactly the same," the ALJ is required to explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. § 404.1520c(b)(3).

On March 14, 2018, Dr. Thompson, a consultative psychological examiner, examined Plaintiff and rendered an opinion on Plaintiff's functioning. Tr. 785-90. Dr. Thompson diagnosed Plaintiff with other specific trauma and stressor-related disorder and unspecified depressive disorder, and rule-out somatic symptom disorder and borderline intellectual disorder. Tr. 789. She opined Plaintiff does not exhibit severe memory deficits, she is capable of understanding, remembering, and carrying out simple work-related instructions, and she may have difficulty interacting in a work setting with coworkers and supervisors. Tr. 790. The ALJ found Dr. Thompson's opinion was generally persuasive, but found there was little

_____

required to provide specific and legitimate reasons for discounting a contradicted opinion from a treating or examining physician. ECF No. 17 at 18-19; ECF No. 18 at 5-14. The Court finds resolution of this question unnecessary to the disposition of this case as it is being remanded on other grounds.

ORDER - 20

basis for the opinion that Plaintiff has limitations interacting with coworkers and thus did not find that portion of the opinion to be persuasive.  Tr. 25.

On June 10, 2018, Dr. Ashworth, a psychological consultative examiner, conducted a neuropsychological examination and rendered an opinion on Plaintiff's functioning.  Tr. 808-14.  Dr. Ashworth diagnosed Plaintiff with depressive mood not otherwise specified, post-traumatic stress disorder, borderline intellectual functioning, and learning disorder not otherwise specified, by history. Tr. 813.  Dr. Ashworth opined Plaintiff is capable of understanding, remembering, and carrying out simple work-related instructions; she would have difficulty interacting in a work setting with coworkers and supervisors, and she has short-term memory deficits, limited store of information, concentration deficits, and abstract reasoning deficits.  Tr. 814.  The ALJ found Dr. Ashworth's opinion was generally persuasive, but found there was little basis for the opinion that Plaintiff has limitations interacting with coworkers and thus did not find that portion of the opinion to be persuasive.  Tr. 25.

The ALJ found there was little basis to support the opinions of Dr. Ashworth and Dr. Thompson that Plaintiff may have limitations in her ability to interact with coworkers and/or supervisors.  *Id.*  Supportability is one of the most important factors an ALJ must consider when determining how persuasive a medical opinion is.  20 C.F.R. § 416.920c(b)(2).  The more relevant objective evidence and

supporting explanations that support a medical opinion, the more persuasive the

medical opinion is. 20 C.F.R. § 416.920c(c)(1). Plaintiff argues there is a basis for

the opinion that Plaintiff has limitations interacting with workers, as Dr. Thompson

and Dr. Ashworth's examinations contained evidence Plaintiff has difficulty

communicating, and Plaintiff argues her symptoms are consistent with the

opinions. ECF No. 17 at 18.

The medical records are consistent with the ALJ's finding that there is little

basis for the opinion that Plaintiff has limitations interacting with coworkers. At

Dr. Ashworth's examination, Plaintiff had slow responses, but she was

cooperative, polite, and responsive, though with sparse answers. Tr. 810. Plaintiff

reported she has little contact with family or friends, but also reported seeing a

friend the month prior. Tr. 811. Dr. Thompson also found Plaintiff was

cooperative, polite, responsive, and appropriate. Tr. 786. Plaintiff was not

tangential, and had normal language use. Tr. 787-88. Plaintiff reported being

socially isolated, but also reported regularly interacting with her father-in-law, two

best friends, her siblings, and her children. *Id.* The third-party questionnaire,

completed by Plaintiff's husband, indicates Plaintiff does not have difficulty

getting along with others, nor with authority figures. Tr. 335-36. Plaintiff reported

in her function report that she spends time with others in person, chats online and

by phone with others a few hours per day, and while she reported not liking

crowds, she reported no issues getting along with others nor with authority figures. Tr. 346-48. The ALJ's finding that Dr. Thompson and Dr. Ashworth's opinion is not supported by the evidence is a specific and legitimate reason, supported by substantial evidence, to reject the opinions. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004); *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Connett v. Barnhart*, 340 F.3d 871, 875 (9th Cir. 2003).

## CONCLUSION

Having reviewed the record and the ALJ's findings, the Court concludes the ALJ's decision is supported by substantial evidence and free of harmful legal error. Accordingly, **IT IS HEREBY ORDERED**:

1. The District Court Executive is directed to substitute Kilolo Kijakazi as Defendant and update the docket sheet.

2. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3. Defendant's Motion for Summary Judgment, **ECF No. 18**, is **GRANTED**.

4. The Clerk's Office shall enter **JUDGMENT** in favor of Defendant.

ORDER - 23

The District Court Executive is directed to file this Order, provide copies to counsel, and **CLOSE THE FILE**.

DATED July 16, 2021.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE

ORDER - 24